# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

MIKE ASTOURIAN, et. al.,      )
                              )
      Plaintiffs,          )
                              )
v.                           )      No. 07-0179-CV-W-FJG
                              )
BLUE SPRINGS R-IV SCHOOL DISTRICT,   )
                              )
      Defendant.       )

# ORDER

Pending before the Court is Defendant Blue Springs School District's Motion for Judgment on the Administrative Record, or in the Alternative, Motion for Summary Judgment (Doc. No. 17) and Plaintiffs' Motion for Judgment on the Administrative Record (Doc. No. 23). This case is brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. by the parents of student D.A. against the Blue Springs R-IV School District. The administrative record in this case is substantial. Thus, the Court will only provide a brief factual background and brief summary of the arguments presented in the parties' briefs. Each motion will be considered below.

## I.    BACKGROUND[1]

Plaintiffs Michael and Heidi Astourian are the parents of student, "D.A", who was a student in the Blue Springs district ("district"). Student was a seven-year-old child at the

---

[1]The administrative record in this case is quite substantial, including: five volumes of the hearing transcripts, four large binders of exhibits and documents; and other file folders containing numerous other documents. As a result of this sizable record, much of the text contained in the Court's factual background is taken directly from the administrative panel's Findings of Fact as well as the parties' motions, without citation. However, recognizing the Court is required to make an independent determination of the issues using a preponderance of the evidence, giving "due weight" to agency decisionmaking, the Court states that in quoting without citation, it has reviewed the record and independently determined those facts to be true by a preponderance of the evidence. See CJN v. Minneapolis Pub. Schs., 323 F.3d 630, 636 (8th Cir. 2003).

time of the administrative hearing and is a child who has been medically and educationally diagnosed as having autism. In 2002, the parents first had the student evaluated at Children's Mercy Hospital which recommended that the student receive language or speech therapy and placement in a pre-school program. The parents enrolled the student in the Parents As Teachers Program in 2002. In October 2002, the Parents As Teachers Program determined that the student was eligible to attend the Early Childhood Services Center in the district. Subsequently, in November 2002, the Early Childhood Services Center evaluated the student and classified the child as a "young child with a developmental delay." An Individualized Education Program ("IEP") was formed on or about December 20, 2002. The student then began attending the Early Childhood Services Center in January 2003 and attended this program through the summer of 2003 and in the beginning of the 2003-2004 school year. The parents expressed concerns with the progress of the student during this time. In November and December of 2003, the school district reevaluated the student and concluded that the student should receive an educational diagnosis of "a child with autism."

In accordance with the new diagnosis of autism, the school district and the parents modified the student's IEP at a December 19, 2003 IEP meeting. The 2003 IEP did not include a behavior intervention plan. Thereafter, on March 18, 2004, the parents provided the District with a written statement of their intention to withdraw Student from the Early Childhood Services Center and to provide education at home. The student stopped attending the center on March 31, 2004. Later, on June 14, 2004, the Children's Mercy Hospital evaluated the student again and provided a medical diagnosis of autism. The latter evaluation recommended individualized programming, small group programming, regular classroom programming, occupational therapy, speech therapy, and social opportunities outside the family.

On August 30, 2004, another IEP meeting was held to discuss the parent's concerns

2

and revise the IEP. The following individuals were present at this meeting: representatives of the school district, parents, parents' advocate Rand Hodgson, and parents' consultant Nancy Champlin ("Champlin"). Champlin presented the IEP team with the student's present levels of performance and evaluations from the previous summer and the student's home schools. The IEP team met again on September 16, 2004 to present a draft IEP to the parents. The IEP team met again on October 5 and October 22, 2004. By letter dated October 22, 2004, the parents consented to the proposed IEP which was provided to them on November 1, 2004. The final IEP called for the preparation of a behavior intervention and safety plan. The parents and the District also arranged for the parents to view the Student in his proposed learning environment.

However, after consultation with Champlin, the parents had concerns about sending the student to school because they believed the school's proposed setting was detrimental to the student's learning. As a result, the district hired a full-time paraprofessional with autism experience to work with the student in November 2004. On December 1, 2004, the parties agreed to a 30-day trial placement at the school in order to observe whether the placement was appropriate for the student. On December 9, 2004, the student attended the district's kindergarten program for the first time. The student was in the classroom for nine days prior to Christmas break and returned to the District following Christmas break in January 2005. Champlin observed the student in the classroom setting in December 2004 and January 2005. At the January 21, 2005 IEP team meeting, the parties agreed to extend the student's period at the district until the end of 2005. The District also informed the parents at this meeting that it would only allow future observation of student by parents to those periods when the district could observe the student at the same time.

Beginning in February 2005, the District reduced the student's school day to half time. The student continued his placement at the district throughout the spring of 2005 and extended school year services were offered to the parents for the summer of 2005.

3

Following the spring semester in 2005, the parents declined to return the student to the district. While the district found the student to be making progress under his IEP through the spring of 2005, the parents believed the student was not making great progress and the parents had concerns about the district's Applied Behavior Analysis training ("ABA"). The parents offered for Champlin to train the school in ABA training, but the District declined this offer.

Upon withdrawal of the student from the district, the parents did not make a request for reimbursement for home bound services as required under the IDEA. On May 26, 2005, the parents requested a due process hearing from the Missouri Department of Elementary and Secondary Education (DESE).

A due process hearing was held on September 18, 2006 and concluded on September 22, 2006. On February 1, 2007, the three-member Due Process Hearing Panel issued its decision unanimously finding that defendant prevailed on all issues. The composition of the three-member panel included Joshua Douglass, an attorney educated in education law; Beth Mollenkamp, who was selected by the parents and is herself a parent of a gifted child with learning disabilities with a M.A. in professional psychology; and George Wilson, who was selected by the District and is the former Director of Special Education in the Springfield Public School District. The panel unanimously concluded that the IEPs developed by the School District were reasonably calculated to provide the student with a free appropriate public education. Further, the panel determined that the parents were not entitled to reimbursement for home school education because they did not provide notice to the District before unilaterally taking their child out of school and the procedural deficiencies in the IEP did not impact the student receiving a free appropriate public education.

On March 6, 2007, the parents filed their Complaint in this Court seeking to reverse the panel's decision and requesting reimbursement for education of their child at home.

Currently, the student remains in home bound placement where his parents are educating him. Both parties have moved for summary judgment on the administrative record.

## II. STANDARD OF REVIEW

The IDEA permits aggrieved parties to seek review of an administrative hearing panel's decision by bringing a civil action in federal court. See Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 654 (8th Cir. 1999) (citing 20 U.S.C. § 1415(i)(2)(A). In a motion for judgment on the record brought pursuant to the IDEA, a district court must review the state administrative record, hear additional evidence if requested, and grant such relief as it deems appropriate based on the preponderance of the evidence. See 20 U.S.C. § 1415(i)(2)(B); CJN v. Minneapolis Pub. Schs., 323 F.3d 630, 636 (8th Cir. 2003). The court is to make an independent decision of the issues based on a preponderance of the evidence, giving "due weight" to the state administrative proceedings. Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997). While the district court's standard of review under the IDEA is less deferential than the substantial evidence test ordinarily applied in federal administrative law cases, courts are admonished to be mindful that they lack the "specialized knowledge and experience" necessary to resolve "persistent difficult questions of educational policy." Blackmon, 198 F.3d at 654-55 (8th Cir. 1999). Additionally, a district court should give consideration to "the fact that the state hearing panel has had the opportunity to observe the demeanor of the witnesses." Fort Zumwalt, 119 F.3d at 610.

## III. DISCUSSION

The IDEA requires a school district that accepts federal funds to provide disabled children within its jurisdiction a "free appropriate public education" (FAPE). See 20 U.S.C. §§ 1400(d)(1)(A), 1412 (a)(1)(A); see also Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1373 (8th Cir. 1996). To provide a FAPE, a school must formulate an individualized education plan (IEP) tailored to the disabled child's unique needs. See 20 U.S.C.

Case 4:07-cv-00179-FJG   Document 30   Filed 08/13/08   Page 5 of 10

§1400(d)(1)(A). The school district must also provide extended school year (ESY) services if the child's IEP team determines, on an individual basis, the services are necessary to provide a FAPE to the child. See id. § 300.309(a)(2). The "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense." Fort Zumwalt, 119 F.3d at 612. Rather, a school district satisfies its obligations under the IDEA if: (1) it complies with the Act's procedural requirements and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07.

"One of the Congressional policies behind IDEA is to ensure disabled children to be educated alongside their non-disabled peers rather than to be shut off from them, 20 U.S.C. §1400, and disabled students are to be educated in a mainstream classroom whenever possible." Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1034 (8th Cir. 2000)(citing Rowley, 458 U.S. at 202; Fort Zumwalt, 119 F.3d at 612). This is embodied in the IDEA's requirement that disabled children be educated in the "least restrictive environment," meaning the disabled student is to be educated with nondisabled students to the "maximum extent appropriate." Pachl v. Seagren, 453 F.3d 1064, 1067 (8th Cir. 2006). However, the mainstream requirement is not applicable where education in a mainstream environment "cannot be achieved satisfactorily." Id. at 1068.

Section 1414(d) of the IDEA enumerates the components that are required to be included in an IEP. See 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(VIII) (2005); 34 C.F.R. § 300.324 (West 2007). The IEP must contain 1) a statement of the child's present level of educational performance; 2) a statement of annual goals, including short-term instructional objectives; 3) a statement of the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs; 4) the projected dates for initiation of service and the anticipated duration of the services; and 5) appropriate objective criteria and evaluation procedures and schedules for

6

determining, on at least an annual basis, whether the short term instructional objectives are being achieved. Id., see also Carl D. v. Special Sch. Dist. of St. Louis County, Mo., 21 F. Supp. 2d 1042, 1048, fn. 7 (E.D. Mo. 1998)(citing 34 C.F.R. § 324.346). The IEP is to be prepared at a meeting among a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, where appropriate, the child. Id. An IEP must be evaluated as of the date it is offered; it cannot be evaluated on the basis of facts and circumstances which became known after that date. See Gill v. Columbia 93 Sch. Dist., No. 98-CV-04192, 1999 WL 33486650, at *1 (W.D. Mo. Sept. 2, 1999)(citing Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993)).

The parents seek judicial review of the hearing panel's administrative decision which found that the 2003 and 2004 IEPs provided FAPE to the student. The parents set forth the following arguments: (1) the IEPs failed to include information required under Section 1401(18) and (19) and failed to address the student's particular needs which deprived the student of FAPE such as failing to include the student's present levels of educational performance; (2) the parents opportunity to participate in the IEP process was seriously hampered; and (3) the parents are entitled to reimbursement as an equitable remedy of the procedural IEP violations.

The District makes the following assertions in opposition to the parent's arguments: (1) the panel decision is well-supported by the evidence in the administrative record and presented at the hearing; (2) the district properly identified and evaluated the student's needs; (3) the IEP provided FAPE to the student and the parents were able to fully participate in the IEP process; and (4) the district provided the necessary special education and related services required by the IDEA and thus parents' claim for reimbursement should be denied.

Upon the Court's review of the administrative record and the parties' briefs, the Court hereby concludes that both the 2003-2004 IEP and 2004-2005 IEP's provided the

student with FAPE and that the parents were fully allowed to participate in the formation of the student's IEPs. The Court has made an independent determination of the record and concurs with the unanimous decision of the administrative panel. The Court finds that both IEPs satisfy the requirements under 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(VIII) and 34 C.F.R. § 300.324. Both IEPs listed and described such components as the educational and functional goals for the child, the child's present level educational performance, and the child's communication needs. Additionally, during the IEP meetings, the required IEP Team members were present: the child's parents, teacher, occupational therapist, and speech pathologist were present as well as the representative from the Local Education Agency ("LEA") and the individual required to interpret the instructional implications of the evaluation results.

Further, the parents were intimately involved with formulating the student's 2003 and 2004 IEPs. The parents had their advocate and in-home therapist, Nancy Champlin, participate in the meetings and Champlin's observations about the child were even incorporated into the IEPs. Moreover, the district allowed Champlin to observe the student in the classroom and Champlin reported back to the parents with her findings and observations.

The parents argue, however, that the IEPs contained procedural deficiencies such as a lack of a functional behavior plan in the 2003 IEP. Procedural violations may give rise to a claim for reimbursement where the "inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parent's right to participate in the formulation process, or caused a deprivation of educational benefits." Indep. Sch. Dist. v. S.D., 88 F.3d 556, 561 (8th Cir. 1996). The Court agrees that the 2003 IEP failed to include a functional behavior plan for the student as the 2004 IEP included. However, the Court finds that this procedural deficiency did not seriously hamper the parent's right to participate in the IEP process and this deficiency did not compromise the child's right to

receive FAPE. The district even hired a full-time paraprofessional with autism experience to accommodate the student's needs. In addition, evidence from the administrative record shows that the student was making progress. In fact, the student's teachers and school therapist testified at the hearing that the student was indeed making progress. The IDEA does not require that progress be attained in a certain time frame as every child progresses at a different rate.

Finally, the Court hereby denies the parent's claim for reimbursement. The parents have not demonstrated any procedural deficiency which seriously hampered their right to participate in the IEP process or that the IEPs failed to provide the student with FAPE. Further, since the parents failed to provide the district with notice before it unilaterally removed the student from the school, the Court cannot award reimbursement to the parents under the IDEA. The IDEA does not allow for reimbursement of private school placements or home schooling when parents fail to provide notice to the school district prior to acting and when the IEP meets the IDEA requirements. See Fort Zumwalt, 119 F.3d at 614 (quoting School Comm. of Burlington, Mass v. Department of Educ., 471 U.S. 359, 373-74); see also Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 373-74, 105 S.Ct. 1996 ("parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, do so at their own financial risk.").

Therefore, because the district provided the student with free appropriate public education, the Court hereby **GRANTS** defendant's motion for judgment on the administrative record and **DENIES** plaintiff's motion for judgment on the record.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant Blue Springs School District's Motion for Judgment on the Administrative Record, or in the Alternative, Motion for Summary Judgment (Doc. No. 17) is **GRANTED** and Plaintiffs' Motion for Judgment on the

Administrative Record (Doc. No. 23) is **DENIED**.

      **IT IS SO ORDERED.**


Date:   8/13/08                           **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                     Fernando J. Gaitan, Jr.
                                           Chief United States District Judge